CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

March 24, 2026

LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| Mohammed Azimi, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25-cv-00024 |
| | ) | |
| Palma Pustilnik, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

Plaintiff Mohammed Azimi, proceeding *pro se*, alleges that Defendant Palma Pustilnik committed various forms of misconduct when representing the mother of Azimi's children in a child custody dispute in Virginia state court. This matter is before the court on Pustilnik's motion to dismiss Azimi's amended complaint, (Dkt. 14), Azimi's motion for an extension of time to file, (Dkt. 24), his motion for recusal, (Dkt. 27), and his motion for a temporary restraining order and preliminary injunction, (Dkt. 28). For the foregoing reasons, the court will grant Pustilnik's motion and deny Azimi's motions.

### I.    Background[1]

Starting in early 2023, Plaintiff Azimi and his wife have been involved in a dispute over the custody of their children. (Am. Compl. at 7 (Dkt. 10).) Later that year, Defendant Pustilnik began assisting Azimi's wife with the dispute, and Pustilnik entered a limited appearance on the wife's behalf in the Albemarle Juvenile & Domestic Relations Court ("AJDRC") around

---

[1] The facts alleged in Azimi's amended complaint and supporting exhibits are accepted as true when evaluating whether the complaint states a claim upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

March 2024.  (*Id.* at 7–8.)  Pustilnik engaged in "ex parte discussions and strategic planning" with the guardian at litem appointed to represent Azimi's children's best interests and "assisted" Azimi's wife when she sought a protective order against him.  (*Id.* at 8.)

When Azimi's wife "attempted to circumvent" going through the custody proceedings in Virginia by initiating a proceeding in New York, Pustilnik "actively assisted in this forum-shopping strategy."  (*Id.* at 9.)  On April 11, 2024, the Clerk of the AJDRC, Stephanie Bunch, "conveyed false information to the New York court," incorrectly stating that the Virginia judge was "ill" when "no such illness existed."  (*Id.*)  Clerk Bunch "act[ed] in coordination" with Pustilnik to "manipulate[] the New York court" in order to "buy[] time" for Azimi's wife's "improperly filed case."  (*Id.*)  According to Azimi, Pustilnik's role in "engineering this delay" was a "deliberate attempt to deny [Azimi] timely access to the courts and to his children."  (*Id.* at 10.)

After the jurisdiction "incident," Azimi submitted requests under Virginia's Freedom of Information Act ("FOIA") law.  (*Id.*)  But Clerk Bunch, "influenced or encouraged by" Pustilnik, "stonewalled" Azimi's FOIA requests and "with[held] or destroy[ed] records to cover up their misconduct."  (*Id.*)

Alongside the custody dispute, Azimi and his wife were litigating a divorce.  (*Id.* at 11.)  The divorce decree issued by the Albemarle Circuit Court contained a provision ordering Azimi to perform a specific Islamic divorce ritual.  (*Id.*)  "Upon information and belief, this provision was authored or strongly advocated" for by Pustilnik.  (*Id.*)  According to Azimi, the

inclusion of this order was "concocted by Defendant Pustilnik to harass and punish" Azimi. (*Id.* at 12.)

Around the middle of 2024, Azimi was charged in Albemarle County with alleged domestic assault and battery. (*Id.*) Pustilnik "shared information with the prosecutor, beyond what was provided through formal discovery, in order to bolster the criminal case against [Azimi]." (*Id.* at 13.) This "cross-case strategizing," combined with the prosecutor's "unusual pressure" on Azimi's defense counsel, caused Azimi to proceed to trial *pro se*, which was "exactly what Defendant Pustilnik and [the prosecutor] intended." (*Id.* at 13–14.) Further, Pustilnik and the prosecutor "agreed to keep [material exculpatory] evidence hidden" before and during his criminal trial. (*Id.* at 15.) According to Azimi, Pustilnik's "presence" during the criminal proceedings and "influence[]" on the custody proceedings "demonstrat[ed] a coordinated effort" with other state officials to "use the criminal trial to achieve custody outcomes through deception." (*Id.* at 14.)

Azimi originally filed this action against Pustilnik on April 21, 2025. (Dkt. 1.) After the court dismissed his complaint under 28 U.S.C. § 1915(e) for failure to state a claim upon which relief can be granted, (Dkt. 5), the court granted Azimi's motion to vacate the previous judgment and amend his complaint, (Dkt. 9). Azimi filed an amended complaint on July 7, 2025, (Am. Compl.), and filed supplemental exhibits in late August 2025, (Dkt. 19). Azimi's allegations under federal law include that Pustilnik violated his constitutional rights under the First and Fourteenth Amendments and that she conspired with others to violate his civil rights. (*See* Am. Compl. at 18–33.) His allegations under Virginia law include that Pustilnik abused

the legal process, tortiously interfered with Azimi's parental rights, intentionally inflicted emotional distress, and violated Virginia's FOIA law.  (*Id.* at 33–45.)

On August 8, 2025, Pustilnik filed a motion to dismiss Azimi's amended complaint. (Dkt. 14.)  Azimi responded in opposition seventeen days later, (Pl.'s Resp. (Dkt. 18)), and Pustilnik replied four days after that, (Def.'s Reply (Dkt. 20)).  Azimi filed a motion for recusal on November 17, 2025.  (Dkt. 27.)  On February 27, 2026, Azimi filed a motion for temporary restraining order and preliminary injunction.  (Dkt. 28.)  Pustilnik responded on March 13, (Dkt. 30), and Azimi replied one week later, (Dkt. 32).

## II.    Standard of Review

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  They do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In reviewing a motion to dismiss for failure to state a claim, "a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing*, 959 F.3d at 616.

The court must liberally construe pleadings filed by a *pro se* party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). The liberal construction rule "allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). That said, liberal construction "does not transform the court into an advocate" for *pro se* parties. *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990). *Pro se* parties, like all litigants, must comply with the pleading requirements in the Federal Rules of Civil Procedure. *Bing*, 959 F.3d at 618.

### III.    Analysis

#### A. Motion for Recusal

As an initial matter, Azimi argues that the undersigned should recuse from this matter. (Dkt. 27.) Azimi contends that "[a] reasonable observer . . . could fairly question the Court's impartiality" because the court has invoked certain doctrines to dismiss several of his cases before it. (*Id.* at 3–4.) He claims that the court's legal rulings constitute a "consistent pattern across multiple cases involving the same plaintiff, the same core factual context, and the same types of defendants" that "creates an appearance that Plaintiff's constitutional rights are taking a back seat to institutional concerns." (*Id.* at 4.) He submits that "reasonable doubts about impartiality" are "unavoidable." (*Id.* at 5.)

This court has faithfully applied the law in all of Azimi's cases before it. That Azimi seeks a different outcome in his suits against "the same types of defendants" about "the same core factual context," (*id.* at 4), does not support recusal. *See Perry v. Correct Care Sols., LLC*, No. 1:17-cv-00586, 2017 WL 11519169, at *2 (E.D. Va. June 28, 2017) ("[E]ntry of an adverse

ruling, without more, is insufficient to warrant recusal. . . . Because plaintiff points to no extrajudicial source for the Court's alleged bias or prejudice, no reasonable factual basis for doubting the Court's impartiality has been shown."); *Drumheller v. Kijakazi*, No. 3:21-cv-00565, 2022 WL 4227232, at *6 (E.D. Va. Sep. 13, 2022) ("[A] previous adverse ruling against a party does not give rise to a basis to recuse."). Accordingly, the court will deny Azimi's motion for recusal.

### B. Claims Under 42 U.S.C. § 1983 (Counts I, II, III, and IV)

Azimi alleges Pustilnik violated his constitutional rights under the First and Fourteenth Amendments. (Am. Compl. at 18–30.) To bring a claim under 42 U.S.C. § 1983 alleging a deprivation of federal rights, Azimi must sufficiently allege that Pustilnik acted "under color of state law." *West v. Akins*, 487 U.S. 42, 48 (1988).

Azimi alleges that Pustilnik's "willful participation in joint activity with state actors and her usurpation of official functions render her liable as a state actor for purposes of 42 U.S.C. § 1983." (Am. Compl. at 6.) The Supreme Court and the Fourth Circuit have found unequivocally that private attorneys—whether privately retained or court-appointed—do not, by representing a client, act under color of state law within the meaning of § 1983. *See Polk County v. Dodson*, 454 U.S. 312, 317–24 (1981) (holding that a public defender representing a criminal defendant in state court did not act under color of state law); *Deas v. Potts*, 547 F.2d 800, 800 (4th Cir. 1976) (per curiam) (holding that a private attorney retained to represent a criminal defendant did not act under color of state law); *Hall v. Quillen*, 631 F.2d 1154, 1155–56 (4th Cir. 1980), *cert. denied*, 454 U.S. 1141 (1982) (holding that a court-appointed attorney's

representation of a party did not constitute state action).[2]  Thus, Pustilnik did not act under

color of state law by representing the mother of Azimi's children.

The Supreme Court has found an exception to this rule where private persons are

"jointly engaged" with state officials in a prohibited action.  *See Lugar v. Edmonson Oil Co., Inc.*,

457 U.S. 922, 941–42 (1982).  Such joint participation can be found if the person "has acted

together with or has obtained significant aid from state officials."  *Gregg v. Ham*, 678 F.3d 333,

339 n.3 (4th Cir. 2012) (quoting *Lugar*, 457 U.S. at 937).

But Azimi asserts only threadbare allegations of Pustilnik's joint participation with

state actors in a prohibited action.  He argues his "myriad specific facts" detailing Pustilnik's

"communications with the Commonwealth's Attorney, behind-the-scenes influence on the

guardian at litem and clerks, [and] drafting of a court order that incorporated unconstitutional

terms" are sufficient to show that Pustilnik "reached a 'meeting of the minds' with state actors

to achieve certain unlawful results."  (Pl.'s Resp. at 10.)  Pustilnik responds that the facts Azimi

asserts—that she "advised her client; that she made a limited appearance in Virginia J&DR

Court before that Court's jurisdiction was confirmed; that she communicated with the

Guardian ad litem and the Commonwealth's Attorney; and that she drafted a proposed divorce

decree which encompassed the terms agreed to by the parties in open court"—are neither

unconstitutional nor actionable.  (Def.'s Reply at 2.)

Attorneys are and should be free to vigorously represent their clients.  And Azimi only

alleges conclusory and speculative allegations as to any prohibited action, improper

---

[2] "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment."  *United States v. Price*, 383 U.S. 787, 794 n.7 (1966).

coordination or communications with state officials during Pustilnik's representation of her client.  (*See, e.g.,* Am. Compl. at 19 (alleging, without support, that Pustilnik "communicat[ed] false information to the New York court (through Clerk Bunch)" and "secretly bias[ed]" the children's guardian ad litem); *id.* at 3 (alleging, without support, that Pustilnik "worked hand-in-hand with court personnel and prosecutors . . . to manipulate the judicial process to Plaintiff's disadvantage"); Def.'s Br. at 5 (listing allegations).)  These bare allegations are wholly insufficient to plausibly allege joint participation in a prohibited action.

To the extent that Azimi alleges conduct outside of the child-custody proceedings, these allegations are even more speculative.  For example, his allegation that Pustilnik "agreed [with a prosecutor] to keep [material exculpatory] evidence hidden" during plaintiff's criminal trial is pled "on information and belief" and not supported by any facts.  (*See* Am. Compl. at 15.)  Because Azimi does not plausibly allege that Pustilnik acted under color of state law, his § 1983 claims fail as a matter of law, and the court will dismiss Counts I through IV.

## C.  Conspiracy to Violate Civil Rights (Count V)

Azimi alleges that Pustilnik conspired with state actors to deprive him of his federal rights in violation of 42 U.S.C. § 1985(3).  (*See id.* at 30–33.)  Specifically, he claims that Pustilnik "entered into an agreement or mutual understanding with" AJDRC staff, the Albemarle County Assistant Commonwealth's Attorney, his children's guardian ad litem, and "possibly" Azimi's wife and her "close associate(s)."  (*Id.* at 30.)  The conspiracy, according to Azimi, was focused on "unjustly secur[ing]" his wife's "objectives (sole custody, elimination of Plaintiff's parental rights, and punishment of Plaintiff) by unlawful means."  (*Id.*)  Pustilnik

argues that Azimi's amended complaint "states no facts to support any meeting of the minds between Ms. Pustilnik and any of the others involved in the state court proceedings . . . to violate Plaintiff's rights." (Def.'s Br. at 11.)

Section 1985(3) makes it unlawful to conspire "for the purpose of depriving . . . any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). Unlike a § 1983 claim, a § 1985(3) claim does not require state action. *See Sines v. Kessler*, 324 F. Supp. 3d 765, 780 (W.D. Va. 2018) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). A § 1985(3) claim requires proof of

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)). It also requires plaintiff to show a "meeting of the minds" among conspirators to violate plaintiff's constitutional rights. *Id.* (quoting *Simmons*, 47 F.3d at 1377).

Azimi is unable to meet his burden because he does not sufficiently allege a "meeting of the minds" between Pustilnik and others. He claims that the "overt acts" that show a "meeting of the minds" include, among others, the "April 11, 2024 false statement to the New York court; the withholding of FOIA documents; the sharing of confidential information across civil/criminal lines; the pressuring of defense attorneys; the misleading of the jury; and the insertion of the religious mandate in the divorce decree." (Am. Compl. at 30–31.)

- 9 -

But Azimi provides no factual support for his conclusory allegations that Pustilnik was involved in any of these "overt acts." He alleges, with no further support, that Clerk Bunch "act[ed] in coordination" with Pustilnik to make a false statement to the New York court, (*id.* at 9); that "upon information and belief," Pustilnik "influenced or encouraged Clerk Bunch" to commit FOIA violations, (*id.* at 10); that "upon information and belief," Pustilnik "relayed . . . confidential details from the custody case" to the prosecutor in Azimi's criminal case, (*id.* at 13); that the prosecutor pressured Azimi's defense attorneys, which was "exactly what Defendant Pustilnik" wanted, (*id.* at 14); that the state judge's statements to the jury in Azimi's criminal trial, combined with Pustilnik's "presence . . . influencing custody concurrently," "demonstrat[ed] a coordinated effort to use the criminal trial to achieve custody outcomes through deception," (*id.*); and finally, that "upon information and belief," Pustilnik authored a certain religious provision that the Albemarle Circuit Court included in its divorce decree, (*id.* at 11). None of these allegations are supported by any credible facts. "When no concrete factual allegations are offered to support [] a meeting of the minds . . . , the § 1985(3) claim must fail." *Clear Sky Car Wash, LLC v. City of Chesapeake*, 910 F. Supp. 2d 861, 890 (E.D. Va. 2012).

Even if Azimi sufficiently alleged a meeting of the minds, which he did not, he only speculates as to the alleged conspirators' motivations of discriminatory animus. He claims that the alleged conspirators exhibited "pro-mother/anti-father" bias—which he classifies as sex discrimination—and "animus against Plaintiff's religious background." (Am. Compl. at 31.) In support, he contends that:

> These motivations were not incidental; they were central to why Plaintiff was targeted in the way he was. For example, the conspirators might not have conspired to force a religious ritual on someone not of Plaintiff's faith (showing religious-class animus), and they might not have so readily assumed and painted one parent as a villain were he not the father (showing gender animus).

(*Id.*) Even accepting Azimi's well-pleaded allegations as true and drawing inferences in his favor, he simply does not satisfy his burden of "plead[ing] specific facts in a nonconclusory fashion" that Pustilnik and others were motivated by discriminatory animus towards him. *Gooden v. Howard Cnty.*, 954 F.2d 960, 969–70 (4th Cir. 1992). Accordingly, the court will dismiss Count V. *See Francis v. Giacomelli*, 588 F.3d 186, 196–197 (4th Cir. 2009) (affirming the dismissal of a § 1985 claim where plaintiffs failed to show "with specific facts" that defendants were "motivated by a specific class-based, invidiously discriminatory animus to deprive the plaintiffs of the equal enjoyment of rights secured by the law to all" (quoting *Simmons*, 47 F.3d at 1376) (cleaned up)).

### D. State Law Claims (Counts VI, VII, VIII, and IX)

Because the court will dismiss Azimi's federal claims, the court will exercise its discretion to decline supplemental jurisdiction over his state-law claims for Abuse of Process and Fraud on the Court, Tortious Interference with Parental Rights, Intentional Infliction of Emotional Distress, and violations of Virgina's Freedom of Information Act.[3] (Am. Compl. at 33–45.)

A district court has "wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Henderson v. Harmon*, 102

---

[3] Based on the allegations in the complaint, both Azimi and Pustilnik are citizens of Virginia, (Am. Compl. at 5–6), so the court cannot exercise diversity jurisdiction over Azimi's state-law claims. *See* 28 U.S.C. § 1332(a)(1).

F.4th 242, 251 (4th Cir. 2024) (quoting *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995)).

In deciding whether to exercise supplemental jurisdiction over a state-law claim in this scenario, the court weighs multiple factors, including "judicial economy, convenience, fairness, and comity." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). "[G]enerally, when a district court dismisses all federal claims in the early stages of litigation . . . it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." *Id.* (cleaned up). Here, the court concludes that the relevant factors support dismissal, as Virginia state courts are best suited to hear Azimi's state-law claims challenging Pustilnik's conduct in the state child-custody litigation.

## IV.    Conclusion

For the foregoing reasons, the court will grant Pustilnik's motion to dismiss. (Dkt. 14.) All counts will be dismissed without prejudice. Accordingly, the court will deny as moot Azimi's September 29, 2025, motion for an extension of time to file, (Dkt. 24), and Azimi's motion for temporary restraining order and preliminary injunction, (Dkt. 28). Finally, the court will deny Azimi's motion for recusal. (Dkt. 27.)

An appropriate Order will issue.

**ENTERED** this 24th day of March, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE

- 12 -